**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| LAURA LEIGH, | ) | 3:11-cv-00608-HDM-WGC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| KEN SALAZAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is the plaintiff's motion for reconsideration of the court's order denying her motion for a preliminary injunction (#35). Defendants have opposed (#37), and plaintiff has replied (#39, #41).

Plaintiff filed her complaint in this action on August 24, 2011, and an emergency motion for a temporary restraining order on August 25, 2011. Her complaint alleged that the methods used to round up excess wild horses in the Triple B, Maverick-Medicine, and Antelope Valley Herd Management Areas (hereinafter "Triple B Complex") were inhumane and in violation of the law. The complaint sought to halt all further gather activities in the Triple B Complex. On August 29, 2011, before the court's decision on her motion for a temporary restraining order, the plaintiff filed a motion for a preliminary injunction.

1

On August 30, 2011, the court granted plaintiff's motion for a temporary restraining order in limited part and denied it in all other respects. The order enjoined defendants from striking horses with the skids of helicopters and from flying any part of a helicopter dangerously or unreasonably close to horses during the remainder of the first phase of the roundup at the Triple B Complex. When the first phase ended the following day, the temporary restraining order expired.

On September 8, 2011, the plaintiff filed a first amended complaint. In the amended complaint, plaintiff expanded her allegations to include the allegedly inhumane and illegal conduct in all future roundups within the District of Nevada, not just those in the Triple B Complex.

On January 26, 2012, the court conducted a hearing on the motion for a preliminary injunction. The court denied the motion on the grounds that plaintiff could not show an immediate threat of irreparable harm.

On February 14, 2012, the Ninth Circuit Court of Appeals issued a decision in *Leigh v. Salazar*, 668 F.3d 1126 (9th Cir. 2012), *amended and superseded by Leigh v. Salazar*, 892 F.3d 892 (9th Cir. 2012). The plaintiff now moves for reconsideration in light of the court's holding in that case. The defendants respond that the motion is untimely, the motion is frivolous and without support, and plaintiff failed to justify the need for emergency injunctive relief.[1]

---

[1] The defendants also argued that the motion was premature because the Ninth Circuit decision in *Leigh* was not yet final at the time plaintiff filed her motion for reconsideration. With the issuance of the mandate, however, that decision is now final and remains binding unless and until

2

While a motion for reconsideration that seeks only to relitigate the issues underlying a court's preliminary injunction order must be filed within 28 days of the order, a motion based on changed circumstances may be filed any time before the entry of judgment. *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005). Because the Ninth Circuit issued an opinion bearing on this court's analysis of the plaintiff's motion for preliminary injunction after the court denied the motion, plaintiff's motion for reconsideration is timely filed.

Absent highly unusual circumstances, the court should grant a motion for reconsideration only where: (1) it is presented with newly discovered evidence; (2) it has committed clear error or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. *Nunes v. Ashcroft*, 375 F.3d 805, 807 (9th Cir. 2004); *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000); *Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993).

Plaintiff bases her motion for reconsideration on an intervening change in controlling law. In denying the plaintiff's motion for a preliminary injunction, the court held, in part, that plaintiff had not shown a likelihood of irreparable harm because there were no immediate plans for defendants to conduct more roundups in the Triple B Complex. Thereafter, the Ninth Circuit issued its opinion in *Leigh*, which held, in relevant part, that the motion for a preliminary injunction in that case was not moot. *Leigh*, 892 F.3d at 897. Although plaintiff recognizes that

---

reversed by the United States Supreme Court.

3

mootness is a separate inquiry from irreparable harm, she argues that the Ninth Circuit's holding on mootness informs the analysis of irreparable harm.

The court agrees that the Ninth Circuit's decision in *Leigh* impacts its preliminary injunction order in this case, most directly with respect to the question of mootness. Although the court did not issue a final decision as to whether plaintiff's motion was moot, *Leigh* quite clearly dictates the answer. So long as there remain excess horses in the Triple B Complex and the defendants are authorized to return for further roundups, and so long as objectionable conduct is capable of repetition, the plaintiff's motion for a preliminary injunction is not moot.

The court further agrees that *Leigh* bears on its finding with respect to the likelihood of irreparable harm, and the court will therefore reconsider the plaintiff's motion in light of that case. As the court has limited plaintiff's complaint to roundups within the Triple B Complex, the court's reconsideration of the preliminary injunction motion will be similarly limited.[2]

---

[2] The motion for a temporary restraining order and the complaint were confined to the roundup in the Triple B Complex. In her motion for preliminary injunction and amended complaint, plaintiff broadens her allegations to future and ongoing roundups within the state of Nevada but outside of the Triple B Complex. At the hearing on the motion for preliminary injunction, the court indicated that it would limit plaintiff's action to roundups in the Triple B Complex. Although the plaintiff has not moved the court to reconsider its decision in this regard, the court takes this opportunity to clarify its decision.

"In determining federal court jurisdiction, [the court looks] to the original, rather than to the amended, complaint. Subject matter jurisdiction must exist as of the time the action is commenced." *Morongo Band of Mission Indians v. Calif. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).

Plaintiff brings her action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 704. Section 704 provides for judicial review of

4

In order to obtain a preliminary injunction, the plaintiff must show: (1) she will probably prevail on the merits; (2) she will likely suffer irreparable injury if relief is denied; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, an injunction may issue under the "sliding scale" approach if there are serious questions going to the merits and the balance of hardships tips sharply in

---

"[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." Because there is no statute providing for judicial review of the defendants' actions in this case, the actions challenged must be final. *Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n*, 911 F.2d 261, 264 n.1 (9th Cir. 1990). Finality is thus a jurisdictional requirement. *Id.*

Final agency action is that which marks "the 'consummation' of the agency's decision making process – it must not be of a merely tentative or interlocutory nature . . . [and is] one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). "[T]he Supreme Court has defined a nonfinal agency order as one that does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1237 (11th Cir. 2003).

At the time plaintiff filed her complaint in this matter, the only final agency action that she alleged was the decision to round up horses in the Triple B Complex. All other future, unspecified roundups in the state of Nevada were or are contingent on future administrative action, to wit, the issuance of an Environmental Assessment and Decision Record. Accordingly, the future roundups challenged by plaintiff were, at the time she filed her complaint, not final agency action. The court therefore lacks jurisdiction to consider such challenges.

For the same reason, plaintiff's challenge to future roundups is not ripe. A claim is not ripe if it rests on contingent future events that may not occur as anticipated, or indeed may not occur at all. *Texas v. United States*, 523 U.S. 296, 300 (1998). The occurrence of future gathers and whether Sun-J will be employed to conduct such is at this point, and was at the point that plaintiff filed her complaint, contingent on future events that might not occur as anticipated. The claims as to those future gathers were therefore not ripe at the time plaintiff filed her complaint, and she may not assert them in this action. "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990).

plaintiff's favor, so long as plaintiff still shows a likelihood of irreparable injury and that an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

"An injunction is a matter of equitable discretion and is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation marks omitted).

A. Irreparable Harm

At the hearing on the motion for preliminary injunction, the court concluded that for several reasons plaintiff failed to show a likelihood of irreparable harm. First, the defendants had no immediate plans to return to Triple B for more gathers, so it was therefore likely this case would be decided on its merits before any further possible harm could befall plaintiff. Second, Sun-J, the only contractor alleged by plaintiff to be engaging in inhumane conduct, was not currently contracted to do any further roundups in the Triple B Complex. Third, the defendants had taken positive steps to address the issues raised in plaintiff's motion for a preliminary injunction, including a review of the practices used during roundups, the release of a report on the findings, and the drafting of specific instructions for each roundup.

The plaintiff's motion for a preliminary injunction in *Leigh* sought relief with regard to all roundups in the Silver King HMA. Although the defendants had completed a roundup in the Silver King HMA and stated that they had no immediate plans to return, the Ninth Circuit held that there was a "real possibility" further

roundups would be conducted because: (1) the BLM is required to immediately remove excess horses; (2) the BLM had not gathered the total number of horses it had determined were excess before it completed the roundup; (3) the horse population was estimated to grow 20 to 25 percent annually in the Silver King HMA; and (4) the Environmental Assessment ("EA") authorizing the roundup also authorized the defendants to return for further roundups through 2013. *Leigh*, 677 F.3d at 896. Because there was a real possibility of further gathers in the Silver King HMA, the Ninth Circuit held the preliminary injunction motion was not moot. *Id.* at 897.

As in *Leigh*, the BLM's return to the Triple B Complex for further roundups is entirely possible because excess wild horses either remain there or will be present there at some future time, and the BLM is authorized to return to the Triple B Complex through September 2012. The Ninth Circuit's decision in *Leigh* to remand for further consideration of the preliminary injunction motion suggests that the lack of immediate plans to pursue further roundups does not negate a finding of irreparable harm, at least where an EA authorizing the roundup is still in effect, as is the case here.

*Leigh* does not, however, impact the court's other reasons for denying the injunction. For the reasons previously articulated by the court at the hearing on January 26, 2012, the court concludes that plaintiff has failed to show a likelihood of irreparable harm if a preliminary injunction is not issued, except to the extent addressed in the court's temporary restraining order.

B. Likelihood of Success on the Merits

Plaintiff brings her claims pursuant to the Administrative Procedures Act ("APA") and the Wild Free-Roaming Horses and Burros Act ("Wild Horse Act"). Plaintiff asserts that defendants have violated the Wild Horse Act, accompanying regulations, and their own rules, and that their actions may thus be reviewed under the APA.

Even assuming plaintiff's claim is cognizable under the APA, the court is not persuaded that plaintiff is likely to succeed on the merits of her claim except to the extent it alleges inhumane treatment of the horses when helicopters fly dangerously close to the animals. At the hearing on the motion for temporary restraining order, the court found insufficient evidence to support most of plaintiff's claims of inhumane treatment. The conduct the court found inhumane was addressed by the issuance of a temporary restraining order. Accordingly, the plaintiff is not likely to succeed on the merits of her claim for declaratory and injunctive relief except to the extent addressed in the court's temporary restraining order.

C. Balance of Hardships

Because plaintiff seeks only to stop inhumane treatment of horses during the roundups, and not stop the roundups altogether, the balance of hardships tips in her favor. Defendants could still conduct the roundups without engaging in prohibited conduct.

D. Public Interest

In light of the purpose behind the Wild Horse Act and the explicit statutory directive to humanely round up excess wild horses, the public interest would favor the cessation of any

8

inhumane gather techniques.

For the reasons the court has previously articulated at the hearing on the motion for a preliminary injunction, plaintiff has failed to show that a preliminary injunction should issue to avoid irreparable harm as to plaintiff's claims, except to the extent addressed in the temporary restraining order previously issued by the court. In light of the Ninth Circuit's decision in *Leigh* on the issue of mootness, the court, as it did with the issuance of the temporary restraining order, now enjoins and restrains the defendants and their agents from flying helicopters dangerously or unreasonably close to the wild horses during any roundup at the Triple B complex pursuant to defendants' May 17, 2011 final environmental assessment and decision for the complex. In accordance with Rule 65(c), the plaintiff shall post security in the amount of $100.00. In all other respects, the court reaffirms its denial of the plaintiff's motion for a preliminary injunction. Therefore, plaintiff's motion for reconsideration (#35) is **DENIED** except as hereabove set forth.

**IT IS SO ORDERED.**

DATED: This 21st day of June, 2012.

_____
UNITED STATES DISTRICT JUDGE

9