UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

```
LAURA LEIGH,                      )       3:11-cv-00608-HDM-WGC
                                  )
            Plaintiff,            )
                                  )       ORDER
vs.                               )
                                  )
SALLY JEWELL, et al.,             )
                                  )
            Defendants.           )
_____)
```

Before the court is the defendants' second motion to dismiss, or in the alternative motion for judgment on the pleadings (#84). Defendants argue that the court lacks subject matter jurisdiction over plaintiff's claims in this action. Plaintiff has opposed defendants' motion (#93), and defendants have replied (#101). Following the court's order granting plaintiff leave to file a "fourth amended complaint," the court construed the outstanding motion to dismiss as a motion to dismiss the fourth amended complaint and granted the parties leave to file supplemental briefs. On September 19, 2013, defendants filed their supplemental brief (#106). Plaintiff has responded (#107), and defendants have replied (#114).

1

Once the pleadings have closed – "but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings based on a lack of subject matter jurisdiction is analyzed under the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(1).  *Or. Wild v. Connor*, 2012 WL 3756327, at *1 (D. Or. 2012); 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1367, at 221 (3d ed. 2004). Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction.  *Hexom v. Or. Dep't of Transp.*, 177 F.3d 1134, 1135 (9th Cir. 1999).  In determining whether the court has subject matter jurisdiction, the court may consider evidence outside of the complaint.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Plaintiff's complaint asserts that defendants have violated the Wild Free-Roaming Horse and Burros Act ("Wild Horse Act"), 16 U.S.C. §§ 1331 *et seq.*, accompanying regulations, and their own internal policies, by conducting roundups of excess wild horses in an inhumane manner.  Under the Wild Horse Act, the Secretary of the Interior is tasked with protecting and managing the wild horses on the lands it controls.  *Id.* §§ 1332(a),(e), 1333(a).  As designate for the Secretary, the Bureau of Land Management ("BLM") has a "great deal of discretion" in carrying out those duties.  *Am. Horse Prot. Ass'n, Inc. v. Frizzell*, 403 F. Supp. 1206, 1217 (D. Nev. 1975) (citing legislative history).  The Act requires BLM to round up and remove from the range "excess" wild horses, as defined by the statute, and requires that all such roundup activities be conducted "humanely."  16 U.S.C. § 1333(b)(2)(B) (requiring that

2

horses be "humanely captured and removed" and provided "humane treatment and care (including proper transportation, feeding, and handling)"); *see also* 16 U.S.C. § 1338a (providing that helicopter use be "in accordance with humane procedures prescribed by the Secretary"); 43 C.F.R. § 4740.1 (providing that helicopter use be "conducted in a humane manner").

Judicial review of plaintiff's claims is governed by the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*. Under the APA, the court must hold unlawful and set aside agency "action, findings and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law," *id.* § 706(2)(A),(D), and "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). Agency action that is subject to review under the APA includes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

Plaintiff does not argue that the actions she challenges are reviewable by statute. The question is therefore whether she challenges final agency action. If she has not challenged final agency action, the court lacks subject matter jurisdiction to consider her claims. *See San Luis Unit Food Producers v. United States*, 709 F.3d 798, 801 (9th Cir. 2013).

"Agency action is defined to include the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (quoting 5 U.S.C. § 551(13)) (hereinafter cited and referred to as *SUWA*). An agency's failure

3

to act may be challenged only where it has failed to take a discrete action it is required by law to take. *Id.* at 62-63. "For an agency action to be final, the action must (1) mark the consummation of the agency's decisionmaking process and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)) (internal quotation marks omitted). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Id.* (quoting *Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005)).

To decide whether plaintiff's complaint challenges final agency action subject to review under the APA, the court must first clarify what claims the complaint contains, and what claims it does not.[1]

The gravamen of plaintiff's fourth amended complaint is that the wild horse gathers in the Triple B Complex and the Jackson Mountain Herd Management Area have been conducted inhumanely. Specifically, plaintiff alleges that defendants have failed to correct the inhumane actions of its contractor by enforcing the legal and contractual requirements in place to ensure that horses are humanely gathered. With respect to Triple B, plaintiff argues that horses have been treated inhumanely because the contractor has: (1) flown helicopters too close to the horses and run foals

---

[1] The operative complaint in this action is plaintiff's "fourth amended complaint," filed on October 14, 2013 (#113).

4

for too long; (2) failed to ensure the horses had adequate feed and water in temporary holding; (3) failed to control dust from the rotor wash; and (4) temporarily held unweaned foals away from their mothers for up to ten hours.  With respect to Jackson Mountain, plaintiff argues that horses have been treated inhumanely by (1) the use of helicopters during the foaling season; and (2) the use of bait and water trapping.

Plaintiff's bait and water trapping claim was added to the complaint pursuant to the leave granted by the court to include "any additional factual allegations related to inhumane conduct at any roundups conducted pursuant to the Jackson Mountain and Triple B EAs, including bait-trapping at Jackson Mountain."  (Doc. #105 (Order Dated July 23, 2013)).  The court did not grant plaintiff leave to amend her complaint to include a claim relating to bait and water trapping in Jackson Mountain.

Plaintiff's fourth amended complaint contains additional allegations and claims that were not authorized by the court's order granting her leave to amend.  Specifically, it contains assertions regarding the limited observation of the wild horses during roundups and defendants' failure to "disclose the disposition of animals during the removal and post removal process," as well as conclusory assertions that defendants may not be following a mandated order of preference in conducting the roundups.  (Pl. Fourth Am. Compl. 4).

Finally, in her opposition, plaintiff also asserts that her complaint contains a claim that the defendants failed to consider humane gather alternatives when authorizing the roundups.  However, even a generous reading of her complaint does not suggest such a

5

claim.  Moreover, plaintiff was not granted to leave to include any such claim in her complaint.  At this late date, and given plaintiff's several opportunities to amend her complaint, the plaintiff will not be granted leave to file a claim relating to the defendants' alleged failures to consider humane gather alternatives.

Therefore, plaintiff's complaint challenges the actions and/or failures to act of defendants with respect to their contractor(s)' conduct during the wild horse roundups in Triple B and Jackson Mountain.  Plaintiff brings her claim pursuant to § 706(2) – under which the court must set aside unlawful agency action.  However, she frames her claim as a *failure to act*, which is cognizable under § 706(1) – compelling agency action unlawfully withheld.  Given the lack of clarity of plaintiff's position, the court will analyze her claim under both sections.

A. <u>Affirmative Action</u> – § 706(2)

To be subject to review under § 706(2), defendants' actions must be "final agency action."  The question here is whether the conduct of the gathers is agency action that marks the "consummation" of the decisionmaking process and is one from which legal rights or obligations have been determined or from which legal consequences will flow.  Two Ninth Circuit address this issue.

In *Wild Fish Conservancy v. Jewell*, 730 F.3d 791 (9th Cir. 2013), the plaintiffs challenged the Fish and Wildlife Service's actions in closing gates at a dam, which diverted water and obstructed fish passage through certain waterways.  The Ninth Circuit held that the closing of the gates was not challengeable

6

final agency action for two reasons. First, the court held that it was not "a discrete agency action that fits within the APA's definition of that term." *Id.* at 801. The court noted that while the "act of closing the gates . . . has immediate physical consequences, such action is not fairly analogous to a 'rule, order, license, sanction, [or] relief." *Id.* Second, the court held the "individual acts of closing gates . . . do not 'mark the consummation of the agency's decisionmaking process . . . because they constitute day-to-day operations that merely implement operational plans." *Id.* The court noted that "the APA's requirement of final agency action precludes [the court from] undertaking a general judicial review of [an agency's] day-to-day operations." *Id.* at 802 (citing *Mont. Wilderness Ass'n, Inc. v. U.S. Forest Serv.*, 314 F.3d 1146 (9th Cir. 2003), *vacated on other grounds*, 542 U.S. 917 (2004) (holding that the agency's 'routine maintenance work' on federal lands is not final agency action because these activities 'implement [the agency's] travel management and forest plans' for the lands at issue)).

In *Oregon Natural Desert Association v. U.S. Forest Service*, 465 F.3d 977 (9th Cir. 2006), the Forest Service argued that annual operating instructions ("AOIs") issued to permittees who grazed livestock on national forest land were not final agency action because the AOIs merely implemented decisions set forth in longer term management plans. *Id.* at 979-82. The Ninth Circuit disagreed. It held that the AOIs, which were made part of the grazing permits and governed the permit holder's operations for the following year, were "licenses" and therefore "agency action." *Id.* at 980, 983. It further held that rather than merely implementing decisions the

7

Forest Service had already made, the AOIs were also "final" because in imposing the terms and conditions that would govern permittees for the following year, the AOIs marked the consummation of the Forest Service's annual decisionmaking process and were actions "by which rights or obligations" were determined "or from which legal consequences" would flow. *Id.* at 984-89.

Here, the consummation of the decisionmaking process was the decision to conduct a roundup, embodied in the Environmental Assessment ("EA"). The actions taken during the roundup merely implement the EA. No further decisions, such as the setting of rights and obligations that were evident in *Oregon Natural Desert Association*, were made following the EA, nor were any actions taken that fit within the definition of agency action in 5 U.S.C. § 551. Because the conduct of the wild horse gathers is not final agency action, the court lacks subject matter jurisdiction to consider plaintiff's claim under § 706(2). *See San Luis Unit Food Producers v. United States*, 709 F.3d 798, 801 (9th Cir. 2013).

B. Failure to Act – § 706(1)

Plaintiff also frames her claim as a failure to act. (*See* Pl. Fourth Am. Compl. 19) (asserting that defendants have violated their legal duties by failing "to enforce the *humane* laws of the United States" – laws, policies, and regulations – to correct, modify, or stop the contractors' inhumane actions)). Although she insists that a failure to act claim may be properly asserted under § 706(2), regardless of the merit of that claim, a failure to act claim would be cognizable under § 706(2) only where the failure to act effectively resulted in "final agency action." *See Franco v. U.S. Dep't of the Interior*, 2012 WL 3070269 (E.D. Cal. 2012). *Cf.*

8

*Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 926 (9th Cir. 1999) ("This court has refused to allow plaintiffs to evade the finality requirement with complaints about the sufficiency of an agency action 'dressed up as an agency's failure to act.'"). While the defendants' failure to act may have impacted the conduct of the wild horse roundups, the conduct of the wild horse roundups is not "final agency action." Therefore, plaintiff's claim is no more cognizable under § 706(2) when framed as a failure to act.

Regardless, the Supreme Court has suggested that a failure to act claim should be brought under § 706(1). *SUWA*, 542 U.S. at 63 ("The APA provides relief for a failure to act in § 706(1)"). Under § 706(1), an agency's failure to act may be reviewed under the APA only where the agency has failed to take a discrete action it is required by law to take. *SUWA*, 542 U.S. at 62-63.

In *SUWA*, the plaintiffs alleged that the BLM had failed to prevent degradation of wilderness study areas by managing off-road vehicle use and that this violated its duty under statute to manage such areas "in a manner so as not to impair the suitability of such areas for preservation as wilderness." 542 U.S. at 59. While the Court held that the statute was mandatory, it also held that because the duty to not impair was a broad mandate that allowed the agency discretion in how to achieve it, it was not sufficiently specific, or discrete, to be enforceable under the APA. The Court further stated that the limitation of challenges to "discrete" actions is done "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Id.* at 66. The court

9

went on to state:

> If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved-which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management.

*Id.* at 66-67.

Here, plaintiff alleges that defendants failed to ensure that the roundups were conducted "humanely" in accordance with 16 U.S.C. § 1333, 16 U.S.C. § 1338a, 47 C.F.R. § 4700.0-5, and 47 C.F.R. § 4740.1. "Humane" is defined under the statute as "handling compatible with animal husbandry practices accepted in the veterinary community, without causing unnecessary stress or suffering to a wild horse or burro." 43 C.F.R. § 4700.0-5(e). "Inhumane treatment means any intentional or negligent action or failure to act that causes stress, injury, or undue suffering to a wild horse or burro and is not compatible with animal husbandry practices accepted in the veterinary community." *Id.* § 4700.0-5(f).

The court concludes that the words "humane" and "inhumane," as defined and used in the statute and regulations imposes a broad rather than discrete mandate. As such, it affords BLM discretion in conducting the wild horse roundups. The definition is not sufficiently specific that it could be enforced by the courts without interference in defendants' day-to-day operations. Accordingly, plaintiff's claim that defendants have failed to ensure the gathers are conducted "humanely" is not final agency action that may be challenged under the APA. Insofar as her claim

10

is based on the failure to ensure "humane" gathers, the court lacks subject matter jurisdiction and plaintiff's claims must be dismissed.

To the extent plaintiff may have alleged that defendants' failure to regulate the use of helicopters in accordance with 16 U.S.C. § 1338a may be challenged under the APA, plaintiff has failed to provide any regulations or other "humane procedures prescribed by the Secretary" that are sufficiently specific to be enforceable in this court.

Finally, with respect to plaintiff's claim that defendants have failed to enforce the provisions of their contract with their contractor, incorporated into the EA as appendix II, certain of these provisions are substantially more specific – and thus discrete – than the broad statutory mandates and regulations discussed above. However, an agency may be required to follow (and enforce) its own internal policies and rules only where there is some indication that the agency intended to be bound by the policy or rule.

"To be judicially enforceable, a pronouncement must prescribe substantive rules – not interpretive rules, general statements of policy or rules of agency organization, procedure or practice, and must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress." *Lowry v. Barnhart*, 329 F.3d 1019, 1022 (9th Cir. 2003). Agency guidance manuals are generally unenforceable. *See Lowry*, 329 F.3d at 1022; *see also Or. Natural Res. Council v. Devlin*, 776 F. Supp. 1440, 1447 (D. Or. 1991) ("Manual provisions and internal agency guidelines for implementing statutes are

11

generally not binding on agencies."). However, the Supreme Court has not ruled out that a less formal agency plan may "itself create a commitment binding on the agency," if there is "clear indication of binding commitment in the terms of the plan." *SUWA*, 542 U.S. at 69.

Plaintiff has failed to establish that the contractual provisions are substantive rules that were promulgated pursuant to specific statutory authority and in conformance with procedural requirements set by Congress. Accordingly, plaintiff has failed to carry her burden of establishing subject matter jurisdiction with respect to this aspect of her claim, as well.

In opposition to the defendants' motion, plaintiff raises a number of arguments that the court finds to be without merit.

First, plaintiff argues that defendants' motion requests relief already denied in conjunction with their earlier motion to dismiss, at least with respect to Jackson Mountain. However, the arguments raised in the instant motion to dismiss are entirely different from those raised in the defendants' earlier motion to dismiss. Moreover, as subject matter jurisdiction may be raised at any time, defendants' motion is properly made.

Second, plaintiff argues that the defendants' motion is untimely. However, a Rule 12(c) motion may be filed at any time as long as it does not unduly delay proceedings. While defendants filed their motion just a short time before this matter was to be submitted for summary judgment, the filing was prompted by the plaintiff's discovery requests, which defendants believe are improper given the nature of this action. Accordingly, the motion has not *unduly* delayed these proceedings.

12

1    Third, plaintiff makes several arguments as to why her
2 complaint states a claim sufficient to survive dismissal under
3 Federal Rule of Civil Procedure 12(b)(6).  Defendants have not
4 moved to dismiss plaintiff's complaint under Rule 12(b)(6), so
5 these arguments are irrelevant.
6    Finally, plaintiff's opposition relies heavily on her proposed
7 third amended complaint, which the court has not allowed plaintiff
8 to file.  Accordingly, all arguments made in reliance on the "third
9 amended complaint" are irrelevant.
10    In accordance with the foregoing, the defendants' motion for
11 judgment on the pleadings (#84) is hereby **GRANTED**.  The clerk of
12 the court shall enter judgment accordingly.
13    IT IS SO ORDERED.
14    DATED: This 3rd day of January, 2014.

_____
UNITED STATES DISTRICT JUDGE

13